# In the United States Court of Federal Claims

No. 12-95L
(Filed: July 31, 2012)

```
************************************  *
                                     *
CITY OF FORD, et al.,                *    National Trails System Act, 16
                                     *    U.S.C. § 1241 et seq. (2006);
                                     *    Fifth   Amendment   Takings
                   Plaintiffs,       *    Claim; Abandonment Governed
                                     *    by   Federal   Law;   Taking
v.                                   *    Pursuant to Issuance of NITU.
                                     *
THE UNITED STATES,                   *
                                     *
                   Defendant.        *
                                     *
************************************  *
```

*R. Deryl Edwards, Jr.*, Law Offices of R. Deryl Edwards, Jr., Joplin, Missouri, for Plaintiffs.

*Mark S. Barron*, with whom was *Ignacia S. Moreno*, Assistant Attorney General, Environmental & Natural Resources Division, Natural Resources Section, U.S. Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

In this "rails-to-trails" case, Plaintiffs allege that they own real property through which the Boot Hill & Western Railway Co., L.C. ("BHWR") ran a 100-foot right-of-way for railroad purposes in Ford County, Kansas. Plaintiffs contend that BHWR sought to abandon its right-of-way, in which case Plaintiffs would have been free of the railroad easement, but that the Government forestalled the abandonment and encumbered their property anew by converting the right-of-way into a recreational trail pursuant to the Trails Act. Plaintiffs contend that the Government's action constituted a taking of their reversionary property interests in violation of the Fifth Amendment to the U.S. Constitution, entitling them to just compensation.

The Government has filed a motion to dismiss under Rule 12(b)(6) of the Court of Federal Claims ("RCFC"), asserting that Plaintiffs fail to state a claim upon which relief can be granted.  The Government contends that BHWR abandoned the railroad right-of-way for purposes of Kansas law and consequently, that the property reverted to Plaintiffs in fee simple.  Only after Plaintiffs' property interests fully vested as a matter of state law did the Government act to allow the right-of-way to be converted into a recreational trail.  Because Plaintiffs had already acquired their property interests before the federal action, the Government submits that it could not have precluded Plaintiffs from realizing their property interests and thus, the Government action cannot be the basis for a takings claim.  In addition, the Government urges the Court to dismiss Plaintiffs' takings claim on the basis that Plaintiffs have not alleged an encumbrance on their properties.

As set forth below, the Court finds that the Government's motion fails for two reasons.  First, while BHWR may have abandoned its right-of-way for purposes of state law, Plaintiffs have pled facts sufficient to show that BHWR did not abandon its right-of-way for purposes of federal law, which controls the issue of abandonment.  Second, Plaintiffs have pled facts sufficient to show that their properties are subject to an ongoing encumbrance in the form of an easement for recreational trail use and possible railroad reactivation.  As such, the Court finds that Plaintiffs have pled a legally cognizable takings claim under the Fifth Amendment.  The Court denies the Government's motion to dismiss.

<u>Background</u>[1]

I.   Factual Background

In 2000, BHWR acquired a 15.8-mile railway line located between Bucklin and Wilroads in Ford County, Kansas ("the Line").  Compl. ¶ 38; Ex. 3(D).  Representing that "[n]o local traffic has moved over the Line in over four years," BHWR notified the Surface Transportation Board ("STB") on February 24, 2005 that it intended to abandon and railbank the Line.[2]  Compl. ¶ 38; Ex. 2 at 1, 3.  To that end, BHWR filed a "Notice of Exemption" on March 16, 2005, seeking authority from the STB to abandon the Line and noting that "[t]he right-of-way is suitable for a recreational trail."  Compl. ¶ 40; Ex. 3 at 1, 5.  On April 5, 2005, the STB issued an "Abandonment Exemption," finding that BHWR had made the proper certifications for abandonment and stating that the

---

[1] The facts as stated in the Background section of this opinion are not findings of fact by the Court.  Instead, for purposes of the Government's motion to dismiss, the Court accepts as true all well-pleaded allegations in Plaintiffs' Complaint ("Compl. __") and the exhibits attached to the Complaint ("Ex. __").

[2] The National Trails System Act, Pub. L. No. 90-543, 83 Stat. 919 (1968) (codified as amended at 16 U.S.C. §§ 1241-51 (2006)), authorized the STB to preserve unused railroad corridors for future railroad use and use them as recreational trails in the interim.  This process is known as "railbanking."  <u>Ellamae Phillips Co. v. United States</u>, 99 Fed. Cl. 483, 484 (2011).

"exemption will be effective on May 5, 2005 unless stayed pending reconsideration." Compl. Ex. 4 at 2.  The Abandonment Exemption also stated:

> Pursuant to the provisions of 49 CFR 1152.29(e)(2), BHWR shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by BHWR's filing of a notice of consummation by April 5, 2006, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire.

Ex. 4 at 3; see also Compl. ¶¶ 42-44.

The day before the abandonment exemption was to become effective, the STB issued a decision reopening the proceeding at the request of its Section of Environmental Analysis.  See Ex. 6.  Thereafter, and sometime before October 11, 2005, BHWR removed track from the Line and salvaged the rails, plates, and other rail-related connections.  Compl. ¶ 46.

On January 31, 2006, BHWR filed a petition with the STB requesting the issuance of a Notice of Interim Trail Use or Abandonment ("NITU") in order to railbank the Line pursuant to 16 U.S.C. § 1247(d) and 49 CFR 1152.29.  Compl. ¶ 57; Ex. 7.  In its petition, BHWR included a "Statement of Willingness" to assume all legal, financial, and managerial responsibility for the right-of-way.  Compl. ¶ 51; Ex. 7.  BHWR also noted that "[t]he abandonment authorization has not yet been exercised by [BHWR]," and "[n]o notice of consummation has been filed with the [STB]."  Ex. 7.  "Accordingly, the rail line remains subject to the [STB's] jurisdiction to issue a Decision and [NITU]."  Id.

On February 13, 2006, the STB granted BHWR's request and issued a NITU (STB Dkt. No. AB-927X), authorizing BHWR to railbank the Line.  Compl. ¶ 73; Ex. 8 (noting that "[a] railroad is permitted to railbank its own line where the railroad represents that the property is suitable for interim trail use and that it will assume financial responsibility for the line") (citing Roaring Fork R.R. Holding Auth.-Abandonment Exemption-in Garfield, Eagle and Pitkin Counties, CO, STB Docket No. AB-547X, slip op. at 4 n.11 (STB served Oct. 16, 1998)).  The February 13, 2006 decision modified the April 5, 2005 Abandonment Exemption "to the extent necessary to implement interim trail use/rail banking" for the Line.  Ex. 8 at 2.  It also stated that "BHWR must notify the [STB] if it is going to discontinue rail banking and consummate the abandonment."  Id.

On February 10, 2012, counsel for Plaintiffs filed a Complaint in this Court, alleging that the STB's issuance of the NITU on February 13, 2006 effected a taking of Plaintiffs' reversionary interests in the 15.8 mile right-of-way in violation of the Fifth Amendment.  Compl. ¶ 1.  Plaintiffs claim that BHWR fulfilled the requirements for

abandonment under Kansas law and thus, if not for the STB's issuance of the NITU establishing a recreational trail over their land, they would have enjoyed an unencumbered interest in the land. Id. at 3. Plaintiffs seek just compensation for the alleged taking, as well as all attorney's fees and expenses incurred in bringing this action. Id. at 4.

On April 12, 2012, the Government filed a motion to dismiss Plaintiffs' Complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs filed a response to the Government's motion on June 14, 2012, and the Government filed a reply on June 27, 2012. The Court heard oral argument on the Government's motion to dismiss on July 20, 2012 at the National Courts Building in Washington, DC. For the reasons set forth below, the Court denies the Government's motion to dismiss.

II.   Applicable Law

The STB has "exclusive and plenary" jurisdiction to regulate railroad abandonments. Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 321 (1981). To abandon a line under STB jurisdiction, a railroad must apply to the STB under 49 U.S.C. § 10903 (standard abandonment) or 49 U.S.C. § 10502 (abandonment by exemption). Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir. 2006). Once the STB grants a railroad authority to abandon a line, the railroad must file a notice of consummation with the STB "to signify that it has exercised the authority granted and fully abandoned the line." 49 CFR 1152.29(e)(2). If the railroad does not file a notice of consummation within one year of the STB's authorization of abandonment, the STB retains jurisdiction over the line, and "the authority to abandon . . . automatically expire[s]." Id.; Barclay, 443 F.3d at 1376. At that point, "a new proceeding would have to be instituted if the railroad wants to abandon the line." 49 CFR 1152.29(e)(2). By contrast, once abandonment is consummated, STB jurisdiction generally terminates, and state property law controls disposition of the right-of-way. Capreal, Inc. v. United States, 99 Fed. Cl. 133, 136 (2011) (internal citation omitted).

As an alternative to abandonment, the Nationals Trails System Act Amendments of 1983 ("Amendments"), Pub. L. 98-11, 97 Stat. 48, created a process whereby a railroad right-of-way could be preserved for future rail use while being used as a recreational trail in the interim. See 16 U.S.C. § 1247(d) (2006). Under the Trails Act Amendments, once a railroad files an application to abandon a right-of-way, a public or private entity may file a request to acquire it for railbanking and interim trail use. 49 CFR § 1152.29(a). If the railroad agrees to enter into negotiations, the STB will issue a NITU (in the case of exemption proceedings), giving the railroad and "trail sponsor" 180 days to reach an agreement. 49 CFR § 1152.29(d). If the parties do not reach an agreement within that period, the railroad may abandon the right-of-way. Id. If the

parties reach an agreement, the trail sponsor assumes managerial and financial responsibility for the right-of-way. 49 CFR § 1152.29(a), (c)-(d).

The Trails Act states that while the right-of-way is being used as a recreational trail, such use shall not be treated as an abandonment of the right-of-way for purposes of any law. 16 U.S.C. § 1247(d). In that regard, the STB's issuance of a NITU prevents abandonment of the right-of-way and in some cases, forestalls the reversion of state law property interests to the owners of the land abutting the right-of-way. Where, as here, a railroad acquired an easement in the right-of-way (as opposed to fee title), many state laws provide that an unencumbered interest reverts to the abutting landowners once a railroad abandons its easement. Where the issuance of a NITU prevents abandonment and precludes the vesting of state law reversionary interests, its issuance may constitute a taking of those reversionary interests in violation of the Fifth Amendment. See Caldwell v. United States, 391 F.3d 1226, 1233-34 (Fed. Cir. 2004).

Discussion

I.   Standard of Review

In reviewing an RCFC 12(b)(6) motion to dismiss, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in favor of the non-moving party. Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000) (internal citation omitted). To survive a 12(b)(6) motion to dismiss, a plaintiff need provide only "'a short and plain statement of the claim,'" showing a plausible claim to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

II.   Analysis

The parties do not dispute that BHWR held an easement in the right-of-way and that upon abandonment, Plaintiffs were entitled under Kansas law to receive an unencumbered interest in the land. See Def.'s Mot. 8 (conceding for purposes of its motion that BHWR possessed an easement in the right-of-way and that upon abandonment, Plaintiffs would be left with an unencumbered fee interest). The Government contends, however, that sometime before October 15, 2005, BHWR "abandoned its interest in the property as a matter of Kansas law and Plaintiffs' interest in unencumbered property was fully vested." Id. at 10. Based upon this contention, the Government maintains that "[t]he NITU could not have acted to delay Plaintiffs from acquiring an unencumbered interest, because Plaintiffs had already acquired that interest as a matter of Kansas law before the NITU was issued" on February 13, 2006. Id.

Contrary to the Government's position, it is immaterial whether BHWR abandoned the right-of-way for purposes of Kansas law.  As the Federal Circuit explained in <u>Barclay</u>, while state law generally creates property interests, the STB has "exclusive and plenary jurisdiction" to regulate railroad abandonments and the disposition of reversionary interests.   443 F.3d at 1374 (quoting <u>Preseault v. Interstate Commerce Comm'n</u>, 494 U.S. 1, 8 (1990)).   Accordingly, federal, not state, law controls when abandonment occurs.   <u>See id.</u> ("Abandonment cannot occur until authorized by federal law."); <u>Nat'l Wildlife Fed'n v. Interstate Commerce Comm'n</u>, 850 F.2d 694, 704 (D.C. Cir. 1988) ("Nor may state law cause a reverter of a right-of-way prior to an [STB]-approved abandonment.").

The April 5, 2005 Abandonment Exemption noted that the exemption would not be effective until May 5, 2005 and could be stayed upon reconsideration.  Ex. 4 at 2.  The day before the exemption was to become effective, the STB reopened the proceeding, indicating that the exemption never in fact became effective.  <u>See</u> Ex. 6.  Moreover, while the Abandonment Exemption gave BHWR *authority* to abandon the Line, Plaintiffs' allegations show that BHWR did not exercise that authority within the one-year limitation period.   The Government agrees that BHWR did not file a notice of consummation within one year of the Abandonment Exemption.   Thus, pursuant to the Abandonment Exemption, BHWR's authority to abandon the right-of-way automatically expired on April 5, 2006.  <u>See</u> Ex. 4 at 3.

The aforementioned facts illustrate that BHWR did not abandon its Line for purposes of federal law.   Accordingly, the STB retained jurisdiction over the Line and possessed the authority to vacate its Abandonment Exemption and issue the February 13, 2006 NITU upon BHWR's expression of interest to railbank the Line.  <u>See</u> <u>Barclay</u>, 443 F.3d at 1371 (citing 49 CFR § 1152.29(g)).   As both parties appear to concede that BHWR fulfilled state law requirements for abandonment, <u>see</u> Compl. ¶ 1 at 3; Def.'s Mot. 10; Pls.' Opp. 25, the property would have reverted to Plaintiffs in fee simple if not for the STB's issuance of the NITU.   On that basis, Plaintiffs have alleged a legally cognizable claim for a Fifth Amendment taking.  <u>See</u> <u>Barclay</u>, 443 F.3d at 1373 (stating that where a NITU precludes state law reversionary interests from vesting, a plaintiff is entitled to institute an action for a takings claim).

The Government also asserts, however, that Plaintiffs have failed to state a claim for which relief can be granted because Plaintiffs have not alleged an encumbrance on their properties.   The Government maintains that the February 13, 2006 NITU expired and that BHWR has done nothing to create a recreational trail on the right-of-way.  <u>See</u> Tr. (Barron), July 20, 2012 Oral Arg.  As such, the Government submits that no trail use easement currently burdens Plaintiffs' properties.  <u>Id.</u>

The Court disagrees with the Government's position.   Plaintiffs' allegations demonstrate that the February 13, 2006 NITU has not expired.  Upon the STB's issuance

of a NITU, the railroad and the trail sponsor normally have 180 days in which to reach a trail use agreement.  <u>See</u> 49 CFR § 1152.29(c)-(d).  If the parties fail to reach an agreement within that period, the railroad may abandon the right-of-way.  <u>Id.</u>  If they reach agreement, however, "the NITU extends indefinitely to permit interim trail use." <u>Caldwell</u>, 391 F.3d at 1230.

Here, BHWR sought to railbank its own Line.  <u>See</u> Compl. ¶ 51; Ex. 7.  In such a case, there is no need for a 180-day negotiating period; the railroad and the trail sponsor, being one and the same, undoubtedly reached agreement.  Moreover, in its February 13, 2006 NITU, the STB stated that BHWR had fulfilled federal requirements to railbank the Line and act as the trail sponsor.  <u>See</u> Ex. 7.  These facts indicate that the NITU, effective February 13, 2006, <u>see</u> Ex. 7 at 2, extended indefinitely, <u>see</u> <u>Caldwell</u>, 391 F.3d at 1230. The NITU itself supports this conclusion by stating that "BHWR must notify the [STB] if it is going to discontinue rail banking and consummate the abandonment." Ex. 7.  This language suggests an expectation by the STB that the right-of-way would continue to be railbanked indefinitely, absent an indication from BHWR otherwise.

Moreover, whether BHWR has constructed a recreational trail is irrelevant to the issue of whether Plaintiffs have suffered a Fifth Amendment taking.  This is because "the issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way."  <u>Caldwell</u>, 391 F.3d at 1233-34.  Because "a takings claim accrues, if at all, on issuance of the NITU," <u>Barclay</u>, 443 F.3d at 1373, whether Plaintiffs suffered a taking depends on whether the February 13, 2006 NITU blocked the reversion of property interests due to Plaintiffs, not on whether BHWR has worked to convert the right-of-way into a recreational trail, <u>id.</u> at 1374 ("The barrier to reversion is the NITU, not physical ouster from possession.").  As both parties maintain that BHWR fulfilled Kansas statutory requirements for abandonment, the STB's issuance of the NITU on February 13, 2006 blocked the abandonment that would have occurred if not for its issuance.  On that basis, Plaintiffs have a legally cognizable takings claim.

<u>Conclusion</u>

Based on the foregoing, the Court DENIES the Government's RCFC 12(b)(6) motion to dismiss.  The Government shall file its Answer to the Complaint within 14 days, on or before August 14, 2012, in accordance with RCFC 12(a)(4)(A).  Thereafter, the parties shall file the joint preliminary status report pursuant to Appendix A to the Court's Rules.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge